IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| JOSE LUIS GARZA, AND § | | |
| VERONICA GARZA, § | | |
| INDIVIDUALLY AND AS § | | |
| REPRESENTATIVES OF THE § | | |
| ESTATE OF JOSE LUIS GARZA, § | | |
| JR., DECEASED; CYNTHIA LOPEZ § | | |
| AS NEXT FRIEND OF JOSE RUBEN § | | |
| GARZA, MINOR SON; § | | |
| PLAINTIFFS, § | | |
| § | | |
| VS. § | CIVIL ACTION NO: **7:16-CV-00558** | |
| § | | |
| CITY OF DONNA, TEXAS, § | | |
| DEFENDANT. § | | |

**PLAINTIFFS' FIRST AMENDED ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME Plaintiffs, Jose Luis Garza and Veronica Garza, both suing individually and as Representatives of The Estate of Jose Luis Garza, Jr., Deceased ("Decedent"), and Cynthia Lopez As Next Friend of Jose Ruben Garza, Minor Son, ("Plaintiffs"), and file this their First Amended Original Complaint complaining of Defendant, City Of Donna, Texas, and for cause of action would respectfully show unto the Court as follows:

**I.
PARTIES AND SERVICE**

1.  At all times material herein, Plaintiffs Jose Luis Garza and Veronica Garza, Individually and as Personal Representative of the Estate of Jose Luis Garza, Jr., (decedent), are and have been citizens and residents of the City of Donna, State of Texas,

and hence within the boundaries of this Court's judicial district. They bring this action on their own behalf and on behalf of the Estate of Jose Luis Garza, (Decedent), who was their son.

2.  At all times material herein, Plaintiff, Cynthia Lopez As Next Friend of Jose Ruben Garza, Minor Son, is and has been a citizen and resident of the City of Donna, State of Texas, and hence within the boundaries of this Court's judicial district. She brings this action on behalf of her minor son, Jose Ruben Garza, who is Decedent's sole surviving child.

3.  Defendant, the City of Donna, Texas ("Defendant") is a home-rule municipality duly organized and existing pursuant to and under the laws of the State of Texas. Defendant has appeared and answered.

## II.
## JURISDICTION AND VENUE

4.  This is a civil action for appropriate relief, including damages, costs, and attorney's fees, to redress the deprivation of the rights of both Decedent and Plaintiffs under the Constitution and laws of the United States.

5.  This Court has jurisdiction based on 42 USC §1983, as well as upon 28 USC §1331 and 28 USC §1343. Venue is proper in this court under 28 USC §1391(b), because the claims for relief arose in this district.

## IV.
## STATEMENT OF FACTS

6.  Plaintiffs bring this action both individually, as the parents and surviving child of Decedent, as well as Decedent's heirs-at-law. The allegations in this section are alleged upon Plaintiffs' information and belief, and on that basis are alleged to be true.

7. At the time of his death, Decedent was 28 years old, and had a long history of substance abuse involving both alcohol and licit and illicit drugs. Decedent's substance abuse had begun around age 14, such that his parents first attempted to place him in rehab while still in his teens. Upon information and belief, Decedent repeatedly sought emergency room medical care due to his substance abuse, including chest pains arising from cocaine use. Decedent's substance abuse led to numerous arrests on drug and alcohol-related charges, including Driving While Intoxicated, and falsifying a drug test. Decedent's substance abuse prevented him from being regularly employed; since 2006, Decedent could obtain only irregular jobs washing cars or cutting lawns, because of problems caused by his substance abuse. After his death, Decedent's autopsy detected high levels of alcohol and benzodiazepines (ex. Valium, Xanax) in his bloodstream. Upon information and belief, from his early teenage years onward, Decedent never ceased abusing drugs and alcohol; accordingly, Decedent's substance abuse was permanent.

8. As a result of Decedent's substance abuse issues, he frequently became argumentative toward family members when intoxicated, and unable to control his actions, such that he presented a threat of harming both himself and others. In the past two years prior to Decedent's death, when Decedent's intoxicated behavior became uncontrollable, Decedent's family members had telephoned Defendant's City of Donna Police Department, and requested that Decedent be kept in a safe environment to "dry out", i.e. placed in protective custody until his intoxication had worn off. Upon information and belief, in seeking assistance from Defendant's Police Department, Decedent's family expressly informed Defendant that they wanted to protect Decedent from harming himself and/or others. Upon information and belief, Defendant's Police Department had willingly

and uncomplainingly supplied such protective custody on 3 or 4 prior occasions. Upon information and belief, on those prior occasions, Defendant's Police Department would release Decedent from protective custody when he sobered up, without filing any charges against him.

9. At approximately 5:00 a.m., on February 19, 2016, Decedent's mother – Plaintiff, Veronica Garza, – called Defendant's Police Department to the Garza family residence at 2911 Yanez Street, Donna, Texas, once again seeking assistance regarding Decedent, who was intoxicated and had become argumentative toward other family members. In calling Defendant's Police Department, it was the desire of Decedent's family that Decedent be treated as he had been previously, i.e. held in protective custody without charges until he sobered up, so to prevent Decedent from harming himself or others.

10. Upon information and belief, Decedent was a disabled person, in that he suffered from chronic alcoholism and drug addiction, which substantially limited one or more major life activities. Upon information and belief, because Decedent's substance abuse had continued unabated since his teenage years, it must be considered a permanent disability. Upon information and belief, Decedent's substance abuse disability kept him from being regularly employed, had contributed to him being repeatedly arrested and jailed on drug or intoxication-related charges, had repeatedly required Defendant to place him in protective custody, had led to repeated emergency room visits, as well as a stint in rehab while still a teenager. Decedent was intoxicated at the time of the events complained of.

11. By reason of their prior provision of protective custody to Decedent when intoxicated, as well as their admitted knowledge of Decedent's record of arrests on drug and alcohol-related charges, Defendant's Police Department was – upon information and

belief – fully aware of Decedent's disability. Upon information and belief, in both presently and previously seeking assistance from Defendant's Police Department, Decedent's family had informed Defendant that they sought to protect Decedent from the risk of harming himself and/or others, by reason of his disability.

12. Three unknown officers of Defendant's Police Department, two male and one female, arrived at the Garza family residence at approximately 5:30 a.m. One unknown male officer behaved in a harsh and insulting manner in dealing with those members of Decedent's family who were present, and stated that Defendant's police officers "we know why we are here for…". Upon information and belief, while Defendant's officers were present in their home, Decedents' parents again expressly reiterated to the officers that they wanted to protect Decedent from harming himself and/or others. Upon information and belief, such unknown male officer then proceeded to deal with Decedent in an extremely aggressive fashion, handcuffing him and dragging Decedent into a police cruiser, in a manner unjustified by Decedent's own actions.

13. After being taken into the custody of Defendant's Police Department, Decedent was placed in the jail maintained by Defendant at 207 South 10th Street, City of Donna, Texas ("Jail"). Upon information and belief, at the time Defendant's employees booked Decedent into the Jail, he was not at liberty to depart therefrom. Upon information and belief, Defendant's Jail personnel failed to evaluate Decedent for suicidal tendencies upon intake, in violation of Defendant's express policies. Upon information and belief, the suicide screening form which was supposed to be used by Defendant treats a detainee's history of substance abuse as a critical factor in assessing his risk of suicide. Plaintiffs further allege that if Defendant's Jail personnel had so evaluated Decedent, they would

have immediately taken measures specifically intended to guard against Decedent killing himself.

14. Upon information and belief, upon the commitment of Decedent to Defendant's Jail, Decedent was placed in a locked cell. At this time, Decedent began engaging in bizarre and self-destructive behavior indicative of suicide, including repeatedly scooping water from the toilet bowl and dumping it over himself. Decedent also advertised his agitation by pounding repeatedly on the cell door and shouting. Defendant's employees were fully aware of such self-destructive behavior, because of being witnessed by a defendant's employee and former classmate of Decedent's who worked at the Jail, and who conversed directly with Decedent in his cell. Upon information and belief, during such conversation, Decedent expressly communicated his intent to kill himself to Defendant's employee, just thirty minutes before he actually did so. Accordingly, both Defendant and its employees were objectively and subjectively aware of Decedent's intent to kill himself. Upon information and belief, however, no action was taken by any of Defendant's Jail employees in the wake of Decedent's announcement of his suicidal intent.

15. Decedent's cell contained a camera which was linked to a video monitoring system which allowed Defendant's Jail personnel to observe all of Decedent's activities. However, that morning, Decedent laboriously threw numerous pieces of wet paper towel at the lens, and after a great deal of time succeeded in completely covering the camera in his cell. Despite the fact that Decedent's action in terminating surveillance-by-camera was both i) immediately apparent to Defendant's Jail personnel, via the video monitor, and ii) yet another clear signal of Decedent's suicidal intent, Defendant's Jail personnel wholly failed to check up on Decedent. Upon information and belief, Defendant's police officers

and/or Jail personnel knowingly failed to comply with applicable statutes, regulations, and/or guidelines covering Defendant's detention of Decedent, including such guidelines requiring in-person cell checks at regular intervals.

16. Upon information and belief, at approximately 8:46 a.m., Decedent was found hanging from the door of his cell, with a noose fashioned from his clothing. Such discovery was made not by Defendant's police officers and/or Jail personnel charged with overseeing Decedent's well-being, but rather by Federal Immigration and Custom Enforcement officers, during a routine interview of undocumented detainees. Finding Decedent to be wholly unresponsive, Defendant's police officers transported Decedent to Knapp Medical Center in Weslaco, Texas, where he was pronounced dead at 9:12 a.m. The subsequent autopsy conducted by Norma Jean Farley, M.D. gave Decedent's cause of death as "asphyxia by hanging".

17. The most shocking aspect of Defendant's treatment of Decedent, however, lies in the fact that – despite the fact that another detainee had died in Defendant's custody, just five days earlier – Defendant had arranged for the printing of a sign reading "Donna Hilton" to hang in the Jail, presumably to ironically contrast the luxury of the Hilton Hotel chain against the grim conditions in Defendant's Jail, as was the case with the infamous "Hanoi Hilton" where American POWs were tortured. Upon information and belief, **although such "Donna Hilton" sign had not been posted at the time of Decedent's suicide, Defendant chose to do so just hours later, such that it prominently appears in numerous photographs taken during the subsequent investigation of Decedent's death**. Upon information and belief, the persons responsible for formulating Defendant's formal and informal policies regarding the treatment of detainees – including Defendant's

City Commission and/or its Police Chief Ruben "Ram" De Leon to whom, upon information and belief, the City Commission has delegated policy-making authority – had knowledge of and/or approved the posthumous posting of the "Donna Hilton" sign.

18. Whatever Defendant's intent in originally ordering the "Donna Hilton" sign, the fact that Defendant would choose to prominently display it – just hours after Decedent died in its Jail, with knowledge that such mocking sign would appear repeatedly in the investigatory photographs – is indicative of Defendant's deliberate indifference to both Decedent's disability, and his Constitutional right to be protected from his announced suicidal intent, arising from that disability. Indeed, Decedent's parents – Plaintiffs, Jose Luis Garza and Veronica Garza, – were horrorstruck to learn that Defendant's Jail personnel sought to celebrate the Jail conditions that led to Decedent's death, given that his parents had expressly requested that Decedent be placed in protective custody, not due to any criminal wrongdoing, but to keep Decedent from harming himself or others.

19. Upon information and belief, the incidents described herein are indicative and representative of a repeated and ongoing course of conduct by Defendant's employees, tantamount to a de facto custom, policy, and/or repeated practice of condoning and tacitly encouraging the abuse of detainees in violation of their Constitutional rights, including but not limited to, deliberate indifference to detainees with announced suicide tendencies, as well those seeking accommodations for disabilities recognized under the ADA. Upon information and belief, Defendant's City Commission and/or its Police Chief Ruben "Ram" De Leon to whom, upon information and belief, the City Commission has delegated policy-making authority, had actual or constructive knowledge of these abusive actions toward detainees. Moreover, these preexisting and widespread de facto customs, policies

and/or practices of Defendant were the moving force behind the actions and inactions of the Jail employees charged with safeguarding Decedent, thereby giving rise to the violation of Decedent's and Plaintiffs' Constitutional rights as alleged herein.

## V.
## COUNT ONE - <u>VIOLATION OF 42 U.S.C. §1983:</u>

20.  Plaintiffs incorporate by reference all paragraphs above as if they were fully set forth here and, as a first claim for relief, allege;

21.  At all times relevant herein, Defendant's police officers and Jail personnel who dealt with Decedent, and/or were responsible for Decedent's conditions of confinement at the Jail, were acting under the direction and control of Defendant, pursuant to official or unofficial policy and custom.

22.  Upon information and belief, acting pursuant to official or unofficial policy and custom, Defendant knowingly, recklessly, or with deliberate indifference and callous disregard of Decedent's rights, failed to instruct, supervise, control and discipline on a continuing basis Defendant's police officers and Jail personnel who dealt with Decedent, and/or were responsible for Decedent's conditions of confinement at the Jail, in the following respects:

   a) Failing to adequately provide for Decedent's safety, safekeeping and well-being;

   b) Failing to adequately evaluate detainees such as Decedent upon entering the Jail, to determine if such detainees pose a risk of suicide;

   c) Failing to adequately respond where Decedent expressly announced his intent to kill himself to a Jail employee;

   d) Failing to install a video monitoring system whose in-cell cameras were not susceptible to the known risk of being easily obscured by suicidal detainees such as Decedent;

e) Failing to immediately intervene where, as here, a detainee has obscured the camera in his cell;

f) Failing to supervise detainees such as Decedent with sufficient frequency when, upon information and belief, Defendant knew or had reason to know that such detainee posed a risk of suicide;

g) Failing to comply with applicable statutes, regulations, policies and/or guidelines covering detention of detainees such as Decedent, including such guidelines requiring in-person cell checks at regular intervals; and

h) Otherwise depriving Decedent of his constitutional and statutory rights, privileges, and immunities.

23. Upon information and belief, Defendant and its employees were objectively and subjectively aware of Decedent's intent to kill himself, in that Decedent expressly announced such intent to a Jail employee who was a former classmate, just thirty minutes before Decedent carried out such threat. Despite this fact, Defendant and its employees recklessly failed to respond to this known threat, in violation of Decedent's clearly established <u>Fourteenth Amendment</u> right to have his serious medical needs attended to. Such specific episode of inaction is indicative of a larger pattern of deliberate indifference – both subjective and objective, and on the part of both Defendant and its employees – tantamount to a de facto custom which condoned violations of the Constitutional rights of detainees held in its Jail, including those with announced suicide tendencies.

24. Upon information and belief, the incidents described herein are indicative and representative of a repeated course of conduct by Defendant's employees, tantamount to a de facto custom, policy, and/or repeated practice of condoning and tacitly encouraging the abuse of detainees in violation of their Constitutional rights, including but not limited to, deliberate indifference to detainees with announced suicide tendencies. The existence of such an informal policy of deliberate indifference toward detainee well-being was

further demonstrated by Defendant's decision to mockingly display a "Donna Hilton" sign in a prominent location at the Jail just hours after Decedent's death. Upon information and belief, Decedent's death was not an isolated incident of employee misbehavior, but stemmed instead from a de facto municipal policy or custom of deliberate indifference adopted by or known to Defendant's policymakers, including Defendant's City Commission and/or its Police Chief Ruben "Ram" De Leon to whom, upon information and belief, the City Commission has delegated policy-making authority regarding treatment of Jail detainees. Upon information and belief, Defendant's informal policy of deliberate indifference toward mistreatment of detainees was the "moving force" behind the specific actions and inactions that led to Decedent's death.

25. As a direct and proximate cause of the acts of the deliberately indifferent Defendant, as set forth above, Decedent was permitted to commit suicide by hanging, in deprivation of the constitutional rights guaranteed by the Fifth and Fourteenth Amendments of the Constitution of the United States, and protected by 42 USC §1983.

## VI.
## COUNT TWO - AMERICANS WITH DISABILITIES ACT

26. Plaintiffs incorporate by reference all paragraphs above as if they were fully set forth here and, as a second claim for relief, allege;

27. Title II of the Americans With Disabilities Act of 1990 ("ADA") prohibits the exclusion of persons with disabilities from participating in, or denying them the benefits of, the goods, services, programs and activities of the entity or otherwise discriminating against persons on the basis of disability. See 42 USC §12132.

28. Congress delegated to the Department of Justice ("DOJ") the authority to promulgate regulations implementing the ADA as regards public entities such as state and

local governments. The DOJ's regulations provide that "all programs, services, and regulatory activities relating to law enforcement, public safety, and the administration of justice" are governed by the ADA. 28 CFR §35.190(b)(6). Under the language of the ADA and the DOJ's regulations, the ADA is applicable to Defendant.

29. Upon information and belief, Decedent was a qualified individual with a disability, as defined under 42 USC §12131(1) of the Americans with Disabilities Act of 1990 ("ADA"). Decedent suffered from an impairment that substantially limited one or more major life activities, as required under 42 USC §12102(a). More specifically, Decedent suffered from alcoholism and drug addiction. Decedent's substance abuse disability kept him from being regularly employed, and also contributed to him being repeatedly arrested and jailed on drug or intoxication-related charges. Decedent was intoxicated at the time his death while in the protective custody of Defendant.

30. Upon information and belief, Defendant was fully aware of Decedent's disability, given that, in the past two years, Defendant's Police Department had repeatedly placed Decedent into protective custody at the Jail until his intoxication wore off, so as to prevent Decedent from harming himself or others. Such episodes of protective custody arose at the family's request. At the time of the incident complained of, i.e. February 19, 2016, Decedent's family once again requested that Decedent be placed in protective custody, by reason of argumentative behavior which arose from Decedent's substance abuse disability. During all prior episodes of disability-related protective custody, no charges were ever filed by Defendant's Police Department, nor did Decedent's family ever request that such charges be filed.

31.     Pursuant to the ADA, Defendant was obligated to provide Decedent with a custodial Jail environment accommodating his status as an individual suffering from a substance abuse disability, and the attendant heightened risk of suicide.  Upon information and belief, Decedent expressly made this risk-of-suicide component of his disability known to Defendant, when he informed a Jail employee (and former classmate) of his intent to kill himself, just thirty minutes before doing so.

32.     Despite the request of Decedent's family that he be held in protective custody due to disability-related intoxication, Defendant's  police officers and Jail personnel who dealt with Decedent, and/or were responsible for Decedent's conditions of confinement at the Jail, failed to accommodate Decedent's disability, and/or intentionally discriminated against Decedent.  Specifically, Defendant failed to do the following:

   a) Provide specialized training to its police officers and Jail personnel, regarding the treatment of detainees suffering from a substance abuse disability;

   b) Provide safer jail cell alternatives for detainees suffering from a substance abuse disability, so as to reduce the correlative heightened risk of suicide;

   c) Provide heightened medical and/or psychiatric care for detainees suffering from a substance abuse disability, including a thorough intake screening regarding suicidal risk;

   d) Adequately respond where Decedent expressly announced, to a Jail employee,  his intent to kill himself, which suicidal intent arose by reason of his substance abuse disability; and

   e) Provide diligent in-cell surveillance for detainees suffering from a substance abuse disability, including in-cell cameras.

33.     Defendant's failure to provide Decedent with the accommodations set forth above constituted unlawful and intentional discrimination on the basis of disability in violation of Title II of the ADA.  Defendant, the City of Donna, has acted and omitted to act with callous disregard and deliberate indifference to the Fourth Amendment rights of

Decedent, Jose Luis Garza, and as a direct and proximate result of the acts and omissions of the Defendant, the Fourth Amendment rights of Plaintiff have been violated.

34. As a direct and proximate cause of the acts, conduct and omissions by Defendant, Plaintiffs' rights under the United States Constitution were violated, and Plaintiffs' family has suffered and continues to suffer great pain, including emotional losses. Defendant's failure to comply with its obligations under the ADA ultimately resulted in Decedent's death, and gave rise to Plaintiffs' damages set forth below.

## VII.
## WRONGFUL DEATH

35. Plaintiffs incorporate by reference all paragraphs above as if they were fully set forth here and, as a third claim for relief, allege:

36. Defendant owed Decedent a duty of due care to prevent foreseeable harms. Specifically, he was incarcerated at the City of Donna, the defendant, had actual knowledge or reasonably should have known of the risk of harm, injury or death to Jose Luis Garza, by providing him with personal property in his cell, that Defendant knew or reasonably should have known would be utilized to attempt to commit suicide under the then existing circumstances. However, Defendant's police officers and Jail personnel staff failed to continuously monitor the Decedent resulting in his untimely death.

37. Defendant was reckless when they, among other things, failed to properly train, monitor or supervise Jail staff in the policies and procedures, including on the necessary precautions to circumvent possible physical danger to detainees in their care.

38. As a result of the Defendant's actions and inactions, previously described, Decedent died.

## VIII.
## DAMAGES

39. Plaintiff incorporates by reference all paragraphs set forth above, as if fully set forth here.

40. As a direct, producing and proximate cause of the Defendant's actions, in the form of formal and informal customs, policies, and practices, failure to train, audit, supervise, and discipline, and intentional acts maliciously, intentionally, and willfully committed against Decedent Jose Luis Garza, Jr., and deliberate indifference to Decedent's constitutional rights under the US Constitution, Decedent and/or Plaintiffs suffered the following injuries and damages;

41. As a result of the acts and omissions of Defendant, Decedent, Jose Luis Garza, Jr. suffered harms including but not limited to humiliation, pain, physical injuries, loss of liberty, severe fear, anxiety, pain, violations of his Constitutional rights and the loss of his life, the value of which is to be determined according to proof.

42. As a result of the acts and omissions of Defendant, Plaintiffs, Jose Luis Garza and Veronica Garza, suffered the loss of the familial association, loss of companionship and society, including damages to the parent-child relationship, including loss of care, comfort, solace, companionship, protection, services, and/or parental love, loss of parental consortium in the past and future, mental anguish in the past and future, and support of the Decedent, the value of which is to be determined according to proof.

43. As a result of the acts and omissions of Defendant, Minor Plaintiff, Jose Ruben Garza, suffered the loss to the parent-child relationship, including loss of care, comfort, solace, protection, services, and/or parental love; loss of companionship and

society sustained in the past and future; loss of inheritance, mental anguish in the past and future, and support of Decedent, the value of which is to be determined according to proof.

44. As a result of the acts and omissions of Defendant, Plaintiffs suffered and incurred expenses for the funeral and burial of the Decedent, the value of which is to be determined according to proof.

45. On all Counts and Claims for Relief, Plaintiffs demand judgment in their favor and declaratory relief in the form of a declaration that the actions and conduct of Defendant was in violation of 42 U.S.C. § 1983; as well as the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

46. On all Counts and Claims for Relief, Plaintiffs demand judgment in their favor and to award damages, jointly and severally, the value of which is to be determined according to proof.

47. On all Counts and Claims for Relief, Plaintiffs demand judgment in their favor and reasonable attorney's fees and interest pursuant to 28 U.S.C. § 1920, 28 U.S.C. § 1961, and 42 U.S.C. § 1988 et seq.

48. On all Counts and Claims for Relief, Plaintiffs demand judgment in their favor and expenses and cost of litigation and interest pursuant to 28 U.S.C. § 1920, 28 U.S.C. § 1961, and 42 U.S.C. § 1988 et seq.

49. On all Counts and Claims for Relief, Plaintiffs demand judgment in their favor and any other relief the Court may deem appropriate and just, and otherwise in the interest of justice.

## IX.
## REQUEST FOR JURY TRIAL

50. Plaintiffs, in accordance with Rule 38 of the Federal Rules of Civil Procedure, request a trial by jury.

## X.
## REQUEST FOR RELIEF

51. WHEREFORE, Plaintiffs, Jose Luis Garza and Veronica Garza, individually and as Representatives of the Estate of Jose Luis Garza, Jr., Deceased, and Cynthia Lopez As Next Friend of Jose Ruben Garza, Minor Son, demand judgment against Defendant, City of Donna;

   a) For compensatory damages according to proof;

   b) For general damages according to proof;

   c) For an award of interest, including prejudgment interest at the legal rate according to proof;

   d) For costs of suit incurred here on all causes of action;

   e) For reasonable attorney's fees pursuant to 42 U.S.C.A. § 1988; and

   f) For such other and further relief as the court may deem proper.

Dated: 28th of October, 2016.

>Respectfully submitted,
>
>GUERRA LAW FIRM
>320 W. Pecan Avenue
>McAllen, Texas 78501
>Tel. (956) 618-2557
>Fax. (956) 618-1690
>
>By: */s/ MANUEL GUERRA, III*
>MANUEL GUERRA, III
>Federal I.D. No. 22998
>Attorney for Plaintiffs

## **CERTIFICATE OF SERVICE**

   I hereby certify that on October 28th, 2016, a true and correct copy of this document was served on the Defendant.

*Via Fax: 956-504-1408 &*
*Email: Arnold@aguilarzabartellc.com*

Mr. J. Arnold Aguilar
Aguilar Zabarte, LLC
990 Marine Drive
Brownsville, Texas 78520
*Counsel for Defendants, City of Donna*

            */s/ MANUEL GUERRA, III*
            MANUEL GUERRA, III