UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| JOSE LUIS GARZA, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 7:16-CV-00558 |
| | § | |
| CITY OF DONNA, | § | |
| | § | |
| Defendant. | § | |

## ORDER & OPINION

The Court now considers the City of Donna's ("Defendant") Rule 12(b)(6) motion for partial dismissal of Jose Luis Garza, Veronica Garza, and Cynthia Lopez's ("Plaintiffs") claims based on the Fourth Amendment and Title II of the Americans with Disabilities Act ("ADA").[1] After duly considering the record and authorities, the Court **GRANTS** the motion, and **DISMISSES** these particular claims **WITH PREJUDICE**.

### I. BACKGROUND

This suit arose from the suicide of twenty-eight year old Jose Luis Garza, Jr. ("Decedent").[2] Plaintiffs—Decedent's surviving relatives[3]—allege that Decedent "ha[d] a long history of substance abuse involving both alcohol and licit and illicit drugs," including cocaine, dating back to when Decedent was fourteen years old.[4] Plaintiffs further allege that Decedent's substance abuse "led to numerous arrests on drug and alcohol-related charges," and "prevented

---

[1] Dkt. No. 7.
[2] Dkt. No. 10 p.1.
[3] Cynthia Lopez is not ostensibly Decedent's relative, but instead represents Decedent's surviving minor child—Jose Ruben Garza.
[4] Dkt. N. 10 ¶ 7.

him from being regularly employed," limiting Decedent to "irregular jobs [such as] washing cars or cutting lawns."[5]

Decedent was allegedly often "argumentative towards his family members when intoxicated . . . such that he presented a threat of harming both himself and others."[6] As a result, Plaintiffs allege that they had, "on 3 or 4 prior occasions,"[7] "telephoned Defendant's City of Donna Police Department, and requested that Decedent be kept in a safe environment to 'dry out', i.e. placed in protective custody until the intoxication had worn off."[8] Plaintiffs allege that on each of these occasions they "expressly informed Defendant that they wanted to protect Decedent from harming himself and/or others."[9] Plaintiffs further allege that the Donna Police Department would honor these requests, and "would release Decedent from protective custody when he sobered up, without filing any charges against him."[10]

Plaintiffs allege that at 5:00 p.m. on February 19, 2016, Decedent had once again become "intoxicated and . . . argumentative toward other family members."[11] Plaintiffs allege that consequently, Decedent's mother called the Donna Police Department, requesting that they take Decedent into protective custody in order to "protect Decedent from the risk of harming himself and/or others . . . ."[12] Two male officers and one female officer allegedly arrived approximately thirty minutes later, and "behaved in a harsh and insulting manner in dealing with those members of Decedent's family,"[13] and then proceeded to "deal with Decedent in an extremely aggressive fashion, handcuffing him and dragging Decedent into the police cruiser, in a manner unjustified

---

[5] *Id.*
[6] *Id.* ¶ 8.
[7] *Id.*
[8] *Id.*
[9] *Id.* ¶¶ 8 & 11.
[10] *Id.*
[11] *Id.* ¶ 9.
[12] *Id.* ¶¶ 9 & 11.
[13] *Id.* ¶ 12.

by Decedent's own actions."[14] Decedent was then taken to the City of Donna Jail,[15] and "was not at liberty to depart therefrom."[16]

Plaintiffs allege that during the intake process, the jail personnel "failed to evaluate Decedent for suicidal tendencies [using a suicide screening form made for this purpose] . . . in violation of Defendant's express policies."[17] Once Decedent was placed in his cell, he allegedly began "engaging in bizarre and self-destructive behavior . . . including repeatedly scooping water from the toilet bowl and dumping it over himself,"[18] as well as "pounding repeatedly on the cell door and shouting."[19] Plaintiffs allege that thirty minutes prior to Decedent's suicide,[20] a jail employee—coincidently one of Decedent's former classmates—had a conversation with Decedent, in which Decedent "expressly communicated his intent to kill himself . . . ."[21] Plaintiffs allege that nevertheless, "no action was taken by any of Defendant's jail employees . . . ."[22] Plaintiffs allege that Defendant failed to "comply with applicable statutes, regulations, and/or guidelines"[23] in part by not "requiring in-person cell checks at regular intervals."[24]

Decedent's cell allegedly came equipped with a video monitoring system.[25] However, Decedent allegedly "laboriously threw numerous pieces of wet paper towel at the lens, and . . . succeeded in completely covering the camera . . . ."[26] Plaintiffs allege that "at approximately 8:46 a.m., Decedent was found hanging from the door of his cell [by federal Immigration and

---

[14] *Id*.
[15] This jail is allegedly located at 207 South 10th Street, Donna, Texas.
[16] Dkt. No. 10 ¶ 13.
[17] *Id*.
[18] *Id*. ¶ 14.
[19] *Id*.
[20] *Id*. ("Decedent expressly communicated his intent to kill himself to Defendant's employee, just thirty minutes before he actually did so.").
[21] *Id*.
[22] *Id*.
[23] *Id*. ¶ 15.
[24] *Id*.
[25] *Id*.
[26] *Id*.

Custom Enforcement officers], with a noose fashioned from his clothing."[27] It is not clear from Plaintiffs' complaint how much time expired between Decedent's covering of the camera and his suicide. Decedent was then allegedly transported to Knapp Medical Center where he was "pronounced dead at 9:12 a.m."[28] A subsequent autopsy revealed "high levels of alcohol and benzodiazepines (ex. Valium, Xanax) in [Decedent's] bloodstream."[29] The cause of death was "asphyxia by hanging."[30]

Plaintiffs sued Defendant in federal court on September 15, 2016,[31] claiming, via 42 U.S.C. § 1983, that Defendant violated the Fifth and Fourteenth Amendments,[32] the Fourth Amendment,[33] Title II § 12132 of the ADA,[34] and also claiming wrongful death.[35] Defendant filed its Rule 12(b)(6) motion to dismiss all of Plaintiffs' claims except wrongful death.[36] Plaintiffs responded to the motion to dismiss, but also amended their complaint as a matter of course on October 28, 2016,[37] thus vitiating Defendant's Rule 12(b)(6) dismissal motion.[38]

---

[27] *Id.* ¶ 16.
[28] *Id.*
[29] *Id.* ¶ 7.
[30] *Id.* ¶ 16. Though its relevance is not readily apparent, Plaintiffs' complaint greatly emphasizes that "Defendant had arranged the printing [and hanging in the jail] of a sign reading 'Donna Hilton' . . . ." Plaintiffs note that this sign "had not been posted at the time of Decedent's suicide . . . [but] Defendants chose to do so just hours later, such that it prominently appears in numerous photographs taken during the subsequent investigation of Decedent's death." Plaintiffs suggest that this sign was a play on the "infamous 'Hanoi Hilton' [prison camp] where American POWs were tortured." Plaintiffs contend that Defendant's sign "celebrated the [Donna] Jail conditions," thus opening the door to a 42 U.S.C. § 1983 claim by pointing to a "de facto custom, policy, and/or repeated practice of condoning and tacitly encouraging the abuse of detainees in violation of their Constitutional rights." *See* Dkt. Nos. 31 & 34.
[31] Dkt. No. 1.
[32] *Id.* ¶ 16.
[33] *Id.* ¶ 24.
[34] *Id.* ¶ 18.
[35] *Id.* ¶ 39.
[36] Dkt. No. 7 ¶¶ 1.01 & 1.02. In particular, Defendant argued that Plaintiffs' complaint failed to support any Constitutional claims against Defendant via 42 U.S.C. § 1983 because Plaintiffs failed to "identif[y] any facts that would establish a custom or practice of the City to violate their federal rights," which in turn could circumvent Defendant's Eleventh Amendment sovereign immunity. *See id.* ¶ 1.01.
[37] Dkt. No. 10.
[38] Dkt. No. 12.

Defendant then filed another Rule 12(b)(6) dismissal motion on November 7, 2016;[39] this time, Defendant only requested dismissal of Plaintiffs' Fourth Amendment and ADA claims.[40] Defendant did not move to dismiss Plaintiffs' Fifth and Fourteenth Amendment claims, or Plaintiffs' wrongful death claim.[41] It appears to the Court that Plaintiffs' ADA and Fourth Amendment claims are substantively identical in both the original and first amended complaints, except that Plaintiffs add that Decedent told the jail employee that he intended to kill himself.[42]

Plaintiffs responded to Defendant's second dismissal motion on November 28, 2016.[43] However, Plaintiffs failed to address—and thus failed to oppose—Defendant's motion to dismiss Plaintiffs' Fourth Amendment claim. Plaintiffs' response to Defendant's second dismissal motion "request[s] that they be granted leave to amend . . . ."[44] Subsequently, on January 17, 2017, Plaintiffs filed a second amended complaint, without any accompanying motion or justification.[45] The Court struck the second amended complaint for failure to properly move for and justify leave to amend.[46] Thereafter, Plaintiffs filed a formal motion for leave to amend, attaching a proposed amended complaint.[47] The Court denied leave to amend.[48]

With this background in mind, the Court now turns to its analysis of Defendant's most recent partial motion to dismiss, which only seeks dismissal of Plaintiffs' Fourth Amendment and ADA claims as alleged in Plaintiffs' first amended complaint.

---

[39] Dkt. No. 13.
[40] *Id*. ¶ 3.18.
[41] *Id*. ¶ 1.01.
[42] *Compare* Dkt. No. 1 ¶¶ 17–21 *with* Dkt. No. 10 ¶¶ 26–34. Notice that these passages are identical with the exception of ¶ 31, sentence 2 in the amended complaint, as well as ¶ 32(d) in the amended complaint.
[43] Dkt. No. 18. (Plaintiffs' response fails to comply with Federal Rules of Civil Procedure 7(b)(2) and 10 in that it does not include numbered paragraphs, hindering the Court's ability to cite specific sections).
[44] *Id*. at p. 17.
[45] Dkt. No. 20.
[46] Dkt. No. 21.
[47] Dkt. No. 22.
[48] Dkt. No. 27.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 12(b)(6) provides for dismissal of claims that are insufficiently plead.[49] To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[50] This does not require detailed factual allegations, but it does require "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."[51] Courts regards all such well-pleaded facts as true and view them in the light most favorable to the plaintiff.[52] Considered in that manner, factual allegations must "raise a right to relief above the speculative level . . . ."[53]

Rule 12(b)(6) motions require a two-step analysis. First, courts disregard any conclusory allegations because they are not entitled to the assumption of truth.[54] Next, courts undertake the "context-specific" task of determining whether the remaining well-pleaded allegations give rise to an entitlement of relief to an extent that is plausible, rather than merely possible or conceivable.[55]

## III. ANALYSIS

Plaintiffs' response to Defendant's dismissal motion includes a request for leave to amend any improperly pled claims.[56] This request for leave is perfunctory, stating only that in the event this Court should find "Plaintiffs' current pleadings fail to adequately state a claim," Plaintiffs seek leave to amend "so as to address the specific deficiency identified."[57] However,

---

[49] Fed. R. Civ. P. 12(b)(6*); see also L.F. v. Houston Indep. Sch. Dist.*, 2008 WL 4376856, at *1 (S.D. Tex. Sept. 25, 2008) (noting that Rule 12(b)(6) applies to counterclaims).
[50] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182 (2008) (internal quotations omitted).
[51] *Twombly*, 550 U.S. at 555.
[52] *Id.*
[53] *Id.*
[54] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–679 (2009).
[55] *Id.* at 679–680.
[56] Dkt. No. 18. p. 16.
[57] *Id.* p. 11.

Plaintiffs' second motion for leave, filed after the response, attached a proposed amended complaint, indicating how Plaintiffs would attempt to cure their pleading. For reasons already stated in the Court's previous order denying Plaintiffs' second motion for leave to amend, leave here is likewise unwarranted.[58] The Court now proceeds to its analysis.

    A.    *Fourth Amendment claim*

Plaintiffs' Fourth Amendment claim is at best cryptic, and stated in entirety as follows: "Defendant . . . has acted and omitted to act with callous disregard and deliberate indifference to the Fourth Amendment rights of [Decedent], and as a direct and proximate result of the acts and omissions of the Defendant, the Fourth Amendment rights of Plaintiff[s] have been violated."[59] For no apparent reason, Plaintiffs plant this language in the midst of their ADA claim without explanation and do not specify which of Defendant's "acts and omissions" support Plaintiffs' Fourth Amendment claim. The Court is thus left to its own devices. After reasonable review of the factual allegations contained in Plaintiffs' entire complaint, the Court finds that Plaintiffs' Fourth Amendment claim should be dismissed with prejudice. It would seem that Plaintiffs implicitly agree because they do not oppose dismissal of their Fourth Amendment claim. The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.[60]

---

[58] Dkt. No. 27.
[59] Dkt. No. 10 ¶ 33.
[60] U.S. CONST. amend. IV.

Naturally, Fourth Amendment case law enumerates safeguards against unreasonable, government-sanctioned invasions of the body, property, and privacy,[61] and additionally prohibits false arrests[62] and the use of excessive force during an arrest.[63] The import of Fourth Amendment jurisprudence today largely centers around the admissibility of evidence obtained in violation of the Fourth Amendment.[64] In this case, the only claims potentially available to Plaintiffs under the Fourth Amendment appear to be *false arrest* or *excessive force* during arrest.

### i. The Court lacks jurisdiction to entertain Plaintiffs' false arrest claim

Fourth Amendment rights are personal rights which "may be enforced only by the person whose rights were infringed."[65] Consequently, a party generally has no standing to enforce another person's Fourth Amendment rights vicariously.[66] If a party lacks standing to bring a claim, then there exists no case or controversy with regards to that claim, and a federal court has no subject matter jurisdiction to entertain it.[67] At least two federal circuits nevertheless recognize an exception under 42 U.S.C. 1988(a), permitting surviving relatives suing for wrongful death under state law to also bring an excessive force claim under the Fourth Amendment via 42 U.S.C. § 1983.[68]

---

[61] *See e.g.*, *Olmstead v. United States*, 277 U.S. 438 (1928) (limiting the application of the Fourth Amendment to actual physical and property invasions); *Katz v. United States*, 389 U.S. 347 (1967) (expanding application of the Fourth Amendment to invasions of privacy); *Terry v. Ohio*, 392 U.S. 1 (1968) (sanctioning the temporary restriction of a person's liberty when an officer has "reasonable suspicion" to do so); *Brinegar v. United States*, 338 U.S. 160 (1949) (generally requiring probable cause before an officer may arrest a person).
[62] *See e.g.*, *Carthon v. Prator*, 408 Fed. Appx. 779, 782 (5th Cir. 2010) ("The *Fourth Amendment right* to be free from arrest without probable cause has long been clearly established.") (emphasis added).
[63] *See e.g.*, *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004) ("We hold that Flores satisfactorily alleged each element of a Fourth Amendment excessive force claim.").
[64] *See Weeks v. United States*, 232 U.S. 383 (1914) (providing that the federal government may not use evidence obtained in violation of the Fourth Amendment); *see also Mapp v. Ohio*, 367 U.S. 643 (1961) (incorporating via the Fourteenth Amendment the *Weeks* exclusionary principle as against states).
[65] *United States v. Pack*, 612 F.3d 341, 347 (5th Cir. 2010), modified on denial of reh'g, 622 F.3d 383 (5th Cir. 2010) (citing *Rakas v. Illinois*, 439 U.S. 128, 99 (1978)).
[66] *See, e.g., United States v. Grant*, 349 F.3d 192, 195–96 (5th Cir. 2003).
[67] *United States v. One 1998 Mercury Sable Vin: £1MEMF5OU4WA621967*, 122 Fed. Appx. 760, 762 (5th Cir. 2004).
[68] *Loomis v. City of Puyallup Police Dep't.*, 2005 WL 1036445, at *3 (W.D. Wash. May 3, 2005); *Lewis v. City of Hayward*, 2006 WL 436134, at *13 (N.D. Cal. Feb. 21, 2006).

However, no case law appears to exist within the Fifth Circuit applying this exception to Fourth Amendment *false arrest* claims. Thus, the general rule applies, and surviving family members bringing suit for wrongful death under state law do not have standing to bring suit via 42 U.S.C. § 1983 for false arrest on behalf of the deceased. Consequently, this Court has no subject matter jurisdiction to entertain Plaintiffs' vicarious false arrest claim. A federal district court *must* dismiss a claim for lack of subject matter jurisdiction under these circumstances.[69] Thus, Plaintiffs' false arrest claim, insofar as it was pled at all, is **DISMISSED WITH PREJUDICE**.

Alternatively, the Court also observes that even if it had jurisdiction, Plaintiffs asserted their Fourth Amendment claim in a conclusory fashion, and made no allegation that the arresting officers lacked probable cause to arrest Decedent. Lack of probable cause is a necessary element of any Fourth Amendment false arrest claim.[70] Thus, Plaintiffs have also inadequately pled their Fourth Amendment false arrest claim on the merits.

### ii. *Plaintiffs fail to sufficiently plead an excessive force claim*

Even assuming that this court has jurisdiction to entertain Plaintiffs' excessive force claim, Plaintiffs have insufficiently pled it. The elements of a Fourth Amendment excessive force claim are: "(1) an injury, which (2) resulted directly and only from the use of force [when effectuating an arrest] that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable."[71] Here, Plaintiffs do not plead any facts suggesting that Decedent suffered an injury directly resulting from any use of force during Decedent's arrest. Instead, Plaintiffs only allege that Decedent injured *himself* after his arrest and incarceration due to a lack

---

[69] *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see Brainerd v. Sawyer*, 54 Fed. Appx. 406 (5th Cir. 2002).
[70] *See e.g., Garza v. Guerra,* 2010 WL 2607275, at *11 (S.D. Tex. June 25, 2010), aff'd, 463 Fed. Appx. 316 (5th Cir. 2012); *Walton v. Dall. Cty*, 2010 WL 644442, at *1 (N.D. Tex. Feb. 23, 2010).
[71] *United States v. Brugman*, 364 F.3d 613, 616 (5th Cir. 2004).

of supervision, screening, and response to his suicide threat. Thus, Plaintiffs have failed to adequately plead two of the three essential elements of a Fourth Amendment excessive force claim, and as a result have failed to state an excessive force claim upon which relief may be granted. This claim is **DISMISSED WITH PREJUDICE**.

B. *Title II ADA claim*

i. ***Legal standard governing Title II ADA claims***

Plaintiffs allege that Defendant violated Title II of the ADA, which provides that: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[72] Thus, the Fifth Circuit has held that a prima-facie Title II claim has the following elements: the claimant "[1] has a qualifying disability; (2) he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) he is being discriminated against by reason of his disability."[73]

Title II imposes an affirmative obligation upon public entities, including jails and prisons, to make reasonable accommodations for the limitation(s) imposed by an inmates' disability.[74] This is because, as the Supreme Court put it, "failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion."[75] Notably, however, the language of the ADA makes clear that under an accommodation-theory claim, *limitations* are what must be reasonably accommodated: "[T]he term 'discriminate against a qualified individual on the

---

[72] 42 U.S.C.A. § 12132 (West).
[73] *Back v. Texas Dep't of Criminal Justice Institutional Div.*, 2017 WL 1207582, at *2 (5th Cir. 2017).
[74] *Back v. TDCJ-CID,* 2017 WL 1175378, at *5 (E.D. Tex. Jan. 23, 2017), report and recommendation adopted, 2017 WL 1155061 (E.D. Tex. Mar. 28, 2017) (citing *Tennessee v. Lane*, 541 U.S. 509, 531 (2004)); *see also Wright v. Texas Dept. of Criminal Justice*, 2013 WL 6578994, at *3 (N.D. Tex. Dec. 16, 2013) (citing *Pa. Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 213 (1998)).
[75] *Lane*, 541 U.S. at 531.

basis of disability' includes . . . not making reasonable accommodations to the known physical or mental *limitations* of an otherwise qualified individual with a disability."[76] Thus, the Fifth Circuit has stated in rather unequivocal terms that "the ADA requires employers to reasonably accommodate limitations, not disabilities."[77] Because an entity cannot generally be expected to divine a person's limitation, the claimant bears the burden to request the relevant accommodation, unless their disability, resulting limitations, and appropriate accommodations are open, obvious, and apparent.[78] Regardless of the Title II theory employed by a claimant, compensatory damages may not be recovered absent a showing of intentional discrimination.[79]

The predicate question in any Title II claim is whether the claimant is a "qualified[80] individual with a disability" as defined by the ADA.[81] Prior to 2008, the ADA statute did not fully flesh out the meaning of "disability,"[82] and thus the Supreme Court in *Toyota* held that the term should be strictly construed against claimants.[83] In response, Congress amended the ADA in 2008, this time more fully fleshing out the meaning of "disability," and making clear that the statute should be construed to provide broad coverage "to the maximum extent permitted by the .

---

[76] 42 U.S.C.A. § 12112(b)(5)(A) (West) (emphasis added).
[77] *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996).
[78] *Gonzales v. Bexar Cty., Texas*, 2014 WL 12513177, at *5 (W.D. Tex. Mar. 20, 2014), aff'd sub nom. *Gonzales v. Bexar Cty., Tex.*, 584 Fed. Appx. 232 (5th Cir. 2014) (citing *Taylor v. Principal Financial Grp.*, 93 F.3d 155, 165 (5th Cir. 1996)).
[79] *Back*, 2017 WL 1175378, at *5 (citing *Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567, 575 (5th Cir. 2002)).
[80] The Court observes here that Title II of the ADA primarily contemplates disability discrimination against employees in a work environment. This fact is evidenced by the definition of "qualified" in 29 C.F.R. § 1630.2(m): "the individual [must satisfy] the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position."
[81] *See* 42 U.S.C.A. § 12131(2).
[82] *Radick v. Union Pac. Corp.*, 2016 WL 639126, at *5 (S.D. Tex. Jan. 25, 2016), report and recommendation adopted, 2016 WL 632039 (S.D. Tex. Feb. 17, 2016), judgment entered, 2016 WL 633908 (S.D. Tex. Feb. 17, 2016).
[83] *Toyota Motor Manuf., Ky., Inc. v. Williams*, 534 U.S. 184, 196 (2002).

. . ADA."[84] The Fifth Circuit has thus aptly stated that the 2008 Amendments "makes it easier to prove a disability, [however,] *it does not absolve a party from proving one*."[85]

The ADA, as amended, authorizes the Attorney General to fully flesh out the ADA via the promulgation of supporting regulations.[86] Thus, courts look to 29 C.F.R. § 1630 for detailed guidance.[87] Section 1630.2 defines disability as "[a] physical or mental impairment that substantially limits one or more of the major life activities of such individual."[88] A substantial impairment under the ADA is "one that limits an individual's ability to perform a major life activity as compared to most people in the general population.[89] In turn, § 1630.2(i)(1)(i) sets forth a non-exhaustive list of "major life activities," which includes "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing . . . and working."[90]

Importantly, substance addiction is not a per se disability under the ADA.[91] Instead, courts must employ an individual assessment to determine whether the claimant's addiction substantially limited one of his major life activities compared to most people in the general population.[92] Based upon these guiding principles, the Court now turns to its analysis of Plaintiffs' ADA claim.

---

[84] *Radick*, 2016 WL 639126, at *5 (citing 29 C.F.R. § 1630.2(j)(1)(i); 42 U.S.C. § 12102(4)(B); U.S. Pub. L. 110–325, Section (a), ¶ 1).
[85] *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 245 (5th Cir. 2013) (emphasis added).
[86] 42 U.S.C.A. § 12134(a) (West).
[87] *See* 29 C.F.R. § 1630.1–16.
[88] *Id*. § 1630.2(g)(ii).
[89] *Radick*, 2016 WL 639126, at *5 (citing 29 C.F.R. § 1630.2(j)(1)(ii); *Sechler v. Modular Space Corp.*, 2012 WL 1355586, at *10 (S.D. Tex. Apr. 18, 2012))
[90] 29 C.F.R. § 1630.2(j)(i)–(iii).
[91] *Radick*, 2016 WL 639126, at *5 (citing *St. John v. NCI Bldg. Systems, Inc.*, 537 F.Supp.2d 848, 861 (S.D. Tex. 2008)); *Oxford House, Inc. v. City of Baton Rouge, La*., 932 F.Supp.2d 683, 688 (M.D. La. 2013).
[92] 29 C.F.R. § 1630.2(j)(1)(ii); *see Rodriguez v. Verizon Telecom.*, 2014 WL 6807834, at *4 (S.D. N.Y Dec. 2, 2014) ("To constitute a disability within the meaning of the ADA, a plaintiff is required to plead facts demonstrating that his alcohol or drug addiction substantially limits one or more of his major life activities.").

### iii. *Analysis of the Title II ADA claim*

Plaintiffs' ADA claim is expressly grounded in Title II, and rests upon the allegation that Defendant failed to reasonably accommodate Decedent's alleged substance addiction disability.[93] Despite this general approach, the Court observes that Plaintiffs also plead *intentional* discrimination[94] and request compensatory damages (presumably on the basis of intentional discrimination).[95] However, Plaintiffs do not plead any facts from which the Court can reasonably infer ill will or animus towards Decedent due to his substance addiction. Plaintiffs allege that Defendant posted signs in the jail indicating that inmates are generally not treated well,[96] but no reasonable inference of disability-based discrimination can be inferred from this, as opposed to a general dislike for all inmates. For this reason, Plaintiffs' Title II ADA claim must be dismissed insofar as compensatory damages are requested on the basis of intentional discrimination.

Moreover, the Court cannot help but notice that Decedent's autopsy "detected high levels of alcohol and benzodiazepines (ex. Valium, Xanax)."[97] This fact is potentially relevant because, under the ADA, the illegal use of controlled substances does not constitute a disability when the claimant is "currently" using them.[98] The parties do not discuss this issue. However, it ultimately does not matter since dismissal is warranted on other grounds, and because neither alcohol nor benzodiazepines—those substances revealed by Decedent's autopsy—are considered "controlled substances" for purposes of the aforementioned disability exclusion.[99]

---

[93] *See* Dkt. No. 10 ¶ 33 ("Defendant's failure to provide Decedent with the accommodations set forth above constituted unlawful and intentional discrimination on the basis of disability in violation of Title II of the ADA.").
[94] *Id.* ¶ 32.
[95] *Id.* ¶ 50.
[96] *Id.* ¶ 17.
[97] *Id.* ¶ 7.
[98] 29 C.F.R. § 1630.3
[99] *See* 29 C.F.R. § 1630.3(a)(1) (limiting exception to illegal use of controlled substances "as defined in schedules I through V of section 202 of the Controlled Substances Act (21 U.S.C. 812)); *in turn, see* 21 U.S.C.A. § 812 (West)

This said, and with regard to Plaintiffs' reasonable-accommodation theory of liability, the predicate question remains whether Decedent was disabled under the ADA. Plaintiffs specifically allege that Decedent was disabled because he was an *alcoholic and drug addict*.[100] Plaintiffs further allege that these addictions (1) substantially limited his ability to work because he could only obtain irregular jobs such as washing cars or cutting lawns,[101] (2) led to numerous arrests, legal charges, and emergency room visits due to chest pain,[102] and (3) led to a heightened risk of suicide.[103]

Defendant contends that Plaintiffs insufficiently pled any disability,[104] or any relevant relationship between the alleged disability and Defendant's alleged failure to accommodate the associated limitations.[105] The Court agrees. As previously noted, Title II only imposes an obligation to provide reasonable accommodations for *specific limitations* imposed by the claimant's disability.[106] Here, Plaintiffs do not allege that Defendant is liable for failing to accommodate Decedent's limited ability to work, his numerous arrests and legal charges, or his chest pains. Rather, Plaintiffs allege that Defendant is liable for failing to take reasonable steps to prevent Decedent from killing himself. Thus, insofar as Decedent's disability is grounded in non-suicide related limitations, Plaintiffs have failed to plead a *relevant* disability—going to the first element of a Title II claim. Moreover, and for the same reason, Plaintiffs have largely failed to establish any meaningful connection between the refused accommodation and the disability—the third element of a Title II claim.

---

(listing schedule I–V substances, none of which include alcohol or "benzodiazepines"); *see also* 21 C.F.R. § 1308.11–15 (listing updated and amended list of schedule I–V substances, again not listing alcohol or "benzodiazepines").
[100] Dkt. No. 10 ¶ 29.
[101] *Id*. ¶ 7.
[102] *Id*. ¶¶ 7–8, 10, & 29.
[103] *Id*. ¶ 31.
[104] Dkt. No. 13 ¶ 3.11.
[105] Dkt. No. 19 ¶ 2.07.
[106] 42 U.S.C.A. § 12112(b)(5)(A) (West); *Taylor* 93 F.3d at 164.

The allegation that Decedent's substance addiction increased his risk of suicide[107] is also unavailing. Again, the relevant legal question is whether Decedent's alleged substance addiction substantially limited at least one of his major life activities. However, a person's "risk of suicide" is not a life activity. Thus, even if Decedent's substance addiction increased his risk of suicide, it is not at all clear what relevent major life activity is substantially limited by the substance addiction. Plaintiffs do not provide an answer to this question in their complaint. Moreover, the parties have not cited, and the Court cannot find, any binding authorities indicating that substance addiction is a disability under the ADA *by virtue* of its alleged tendency to increase the risk of suicide.[108] For these reasons, Plaintiff's risk-of-suicide-theory of disability fails on the pleadings.

In sum, Plaintiffs have failed to plead sufficient facts establishing that Decedent had a relevant disability to support their Title II, reasonable accommodation claim. Accordingly, Plaintiffs have not properly pled the first or third elements of a Title II claim, and thus by extension have failed to properly plead their ADA claim altogether. Dismissal of this claim is warranted.

---

[107] *See e.g.*, Dkt. No. 10 ¶ 31.

[108] The vast majority of suicide-based ADA cases involve undisputed and independently-established disabilities, or otherwise tend to indicate that suicidal tendencies do not generate ADA-qualifying disabilities. *See Steele v. Rowles*, 2009 WL 2905903, at *10 (E.D. Tex. Sept. 3, 2009) (expressed suicidal intent does not translate into a disability), aff'd, 389 Fed. Appx. 347 (5th Cir. 2010); *Martin v. Brown Sch. Educ. Corp.*, 2003 WL 21077454, at *5 (N.D. Tex. Mar. 14, 2003) ("Indeed, [Plaintiff] fails to even show how being "suicidal" translates into a perceived impairment . . . ."); *Wright v. Tex. Dept. of Criminal Justice*, 2013 WL 6578994, at *1–4 (N.D. Tex. Dec. 16, 2013) (defendant did "not dispute that [Plaintiff] was a qualified individual with a disability" because the decedent "suffered from severe bipolar disorder and schizophrenia"); *Borum v. Swisher Cty.*, 2015 WL 327508, at *1 (N.D. Tex. Jan. 26, 2015) (decedent suffered from "delirium tremens"—sever alcohol withdrawal—and severe depression, and neither the parties nor the court questioned or meaningfully discussed whether the decedent had a disability); *Norman v. Epperly*, 2008 WL 5099685, at *4 (W.D. Mo. Nov. 21, 2008) (holding that "depression, drug overdose, and suicidal tendencies" are not themselves disabilities); *Moore v. Chilton Cty. Bd. of Educ.*, 1 F. Supp. 3d 1281, 1287 (M.D. Ala. 2014) (decedent had Bount's Disease); *Long v. Murray Cty. Sch. Dist.*, 2012 WL 2277836, at *26 (N.D. Ga. May 21, 2012) (decedent had Asperger's), aff'd in part, 522 Fed. Appx. 576 (11th Cir. 2013).

## IV. Holding

The Court **GRANTS** Defendant's motion and **DISMISSES** Plaintiffs' Fourth Amendment and ADA claims **WITH PREJUDICE**. Plaintiffs' wrongful death, Fifth Amendment, and Fourteenth Amendment claims remain pending before this Court.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 5th day of July, 2017.

                                              Micaela Alvarez
                                              United States District Judge